Matter of Gitler (2020 NY Slip Op 03105)





Matter of Gitler


2020 NY Slip Op 03105


Decided on June 3, 2020


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 3, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
JOHN M. LEVENTHAL, JJ.


2019-09134

[*1]In the Matter of Stewart Lee Gitler, an attorney and counselor-at-law. (Attorney Registration No. 1927169)



The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on April 25, 1984. By order to show cause dated September 24, 2019, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed, inter alia, by an order of the Virginia State Bar Disciplinary Board entered May 13, 2019.



Gary L. Casella, White Plains, NY (Glenn E. Simpson of counsel), for Grievance Committee for the Ninth Judicial District.



PER CURIAM.


OPINION & ORDER
By an "Agreed Disposition Memorandum Order" of the Virginia State Bar Disciplinary Board entered May 13, 2019, the respondent was suspended from the practice of law in Virginia for 90 days, effective May 8, 2019.
Virginia Proceedings 
The underlying facts of the disciplinary proceedings in Virginia are set forth in an "Agreed Disposition" entered into between the Virginia State Bar, by Elizabeth K. Shoenfeld, Assistant State Bar Counsel, and the respondent, who was represented by counsel. The parties stipulated to the facts hereinafter discussed.
On October 7, 2015, AMDC Holding, LLC (hereinafter AMDC), filed a patent application for a helix tool locking system with the United States Patent and Trademark Office. At the time, AMDC was represented by an attorney other than the respondent. In 2016, a representative of AMDC (hereinafter the client) sought the respondent's assistance with obtaining appropriate patent protection. In order to receive international protection for this patent while maintaining the United States priority date, the client had to file an international application, or Patent Cooperation Treaty (hereinafter PCT) application, by October 7, 2016. Although the respondent attempted to contact the client prior to the deadline, the client did not notify the respondent that he wanted to file the PCT application until after the October 7, 2016, deadline. The PCT application was filed on October 13, 2016. Although the PCT application was filed six days late, the PCT division provides a mechanism by which an applicant can restore the priority date by paying a fee and asserting that the late filing was unintentional. The respondent submitted a request for restoration of the right to claim the United States priority date, which the PCT division granted.
Within eighteen months after filing the PCT application, the application had to be filed with the European Patent Office (hereinafter EPO). The EPO filing was completed on a timely basis. Jurgen Kritzenberger, the respondent's European associate, advised the respondent to submit a letter to the EPO to explain why the PCT application was filed late. On April 24, 2018, the respondent submitted a Request for Restoration of Priority Date to Kritzenberger to file with the EPO. To explain the late filing, the respondent said that the filing was late because of a "singular mistake of the Attorney of record." He said that the mistake was "inexplicable" because he "remember[ed] receiving instructions to file the PCT International application before the deadline." These assertions were untrue because the client did not instruct the respondent to file the PCT application until after the deadline had passed. On July 26, 2018, the EPO responded to the respondent's April 24, 2018, request. The EPO requested that, within two months, the respondent provide evidence of the monitoring system he has in place to avoid missing deadlines.
On September 21, 2018, the respondent prepared a letter to the EPO, purportedly from his firm's then office manager and docket clerk, Jennifer Kreamer. In that letter, the respondent wrote that the client had left timely instructions to file the PCT application in the respondent's voicemail and that the respondent had not received it, despite due care. These statements were untrue, because the client did not instruct the respondent to file the PCT application until after the deadline. The respondent forged Kreamer's signature on the letter and then notarized the forged signature in his capacity as a notary public. By notarizing the signature, the respondent affirmed that Kreamer had sworn to its contents and signed it in the respondent's presence. The respondent sent the letter to Kritzenberger; however, it was never filed because Kritzenberger said edits were needed.
On September 24, 2018, the respondent prepared a second letter to the EPO, also purportedly from Kreamer. The second letter provided more details regarding Kreamer's actions regarding the PCT application, but like the first letter, the second letter contained misstatements of fact. The respondent forged Kreamer's signature to the second letter and then notarized the forged signature. The respondent sent the second letter to Kritzenberg, who then filed it with the EPO.
Kreamer subsequently learned of the letters. She would not have signed the letters because they contained material misrepresentations. She met with the respondent's law partners, who, together with Kreamer, confronted the respondent. The respondent admitted what he had done and, of his own accord, withdrew the second letter and his request for restoration of priority date. The client was advised of the withdrawal and the reason for the withdrawal.
The respondent represented to the Virginia State Bar that the client was not harmed by the withdrawal, and that the respondent did not bill the client for the work performed in connection thereof.
The parties agreed that the conduct constituted misconduct in violation of Rule 8.4 of the Virginia Rules of Professional Conduct, and agreed that a 90-day suspension was the appropriate sanction.
Order to Show Cause 
By order to show cause dated September 24, 2019, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed, inter alia, by the order of the Virginia State Bar Disciplinary Board entered May 13, 2019, by filing an affidavit in accordance with 22 NYCRR 1240.13(b) with the Clerk of the Court on or before November 15, 2019. Although a copy of the order to show cause was served on the respondent on September 30, 2019, the respondent has not responded or requested additional time in which to do so. However, the Grievance Committee for the Ninth Judicial District has advised the Court that the respondent, in a telephone conversation that occurred prior to service of the order to show cause, indicated that he did not oppose reciprocal discipline, and that the respondent subsequently requested that any discipline imposed by New York be imposed nunc pro tunc to May 8, 2019. In addition, he communicated to the Grievance Committee that he had served the 90-day suspension and had been reinstated in Virginia.
Findings and Conclusion 
Based on the foregoing, we find that the imposition of reciprocal discipline is warranted, and conclude that a suspension from the practice of law for six months is appropriate. However, under the circumstances of this case, including the fact that this matter comes to the Court pursuant to 22 NYCRR 1240.13, that the initial mistake originated with the client, and that the client ultimately was not harmed by the respondent's misrepresentations, we find that nunc pro tunc relief [*2]is appropriate.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and LEVENTHAL, JJ., concur.
ORDERED that pursuant to 22 NYCRR 1240.13, the respondent, Stewart Lee Gitler, is suspended from the practice of law for six months, effective May 8, 2019, and continuing until further order of this Court. The respondent may apply for reinstatement immediately. In such application (see 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), and (3) otherwise properly conducted himself; and it is further,
ORDERED that during the period of suspension and until further order of this Court, the respondent, Stewart Lee Gitler, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of the Court, the respondent, Stewart Lee Gitler, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Stewart Lee Gitler, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court